**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **SEACRET SPA INTERNATIONAL, LTD.**, <br> Plaintiff, <br> v. <br> **MICHELLE K. LEE**, Director of the United States Patent and Trademark Office, <br> and <br> THE UNITED STATES PATENT AND TRADEMARK OFFICE, <br> Defendants. | Case No. 1:15-cv-405-JCC-IDD |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO EXCLUDE OPINION OF THOMAS J. MARONICK**

Defendants Michelle K. Lee, in her official capacity as Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, and the United States Patent and Trademark Office (collectively "USPTO") move to exclude the Oct. 12, 2015, "Final Expert Report" of Plaintiff Seacret Spa International's ("Seacret") proffered expert Thomas J. Maronick. As explained below, Seacret and Dr. Maronick fundamentally misunderstand what kind of evidence is relevant in an *ex parte* civil action contesting a USPTO's decision to refuse registration, and, as a result, base their likelihood of confusion analysis largely on irrelevant facts and suppositions. Further, because Dr. Maronick lacks any experience in the personal care products industry, he is unqualified to opine on distribution practices and consumer behavior in that industry.

**INTRODUCTION**

This action seeks review of the USPTO's refusal to register Seacret's SEACRET mark (in stylized lettering) under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d) ("§ 2(d)") because

it is confusingly similar to two previously-registered SECRET marks ("SECRET registrations") owned by The Procter & Gamble Company ("P&G"). Because this is an appeal of an *ex parte* decision of the USPTO refusing Seacret's application, P&G is not a party. The Lanham Act provides all registered marks statutory presumptions of validity and of the registrant's exclusive right to use the registered mark for the full range of goods and usages specified in the registration. 15 U.S.C. § 1057(b). Therefore, in assessing whether an application must be refused registration under § 2(d), the inquiry is limited to a comparison of the goods or services listed in the application and those listed in any earlier registrations. Evidence about the actual use of the applicant's and registrant's marks, goods, and services in the marketplace that limits or otherwise varies the usages encompassed by the marks, goods, and services listed in the application and registrations at issue is irrelevant to a registrability determination and therefore inadmissible.

Dr. Maronick's opinion should be excluded because it offers irrelevant and improper testimony that erroneously seeks to narrow the SEACRET application and SECRET registrations in violation of Section 7(b) of the Lanham Act, 15 U.S.C. § 1057(b) ("§7(b)"). Dr. Maronick's report must also be excluded because Dr. Maronick is not a properly qualified expert to offer the type of opinion he offers here.

## BACKGROUND

This action is brought pursuant to § 21(b)(3) of the Lanham Act, 15 U.S.C. § 1071(b)(3) ("§21(b)"), and seeks review of the USPTO's *ex parte* examination decision refusing to register Plaintiff's trademark under § 2(d). Plaintiff was the only party to the examination proceedings before the USPTO, and the only proper parties to this action are Plaintiff and the Director of the USPTO. This is not an action between two private parties for trademark infringement or unfair

competition under §§ 32(1) and 43(a), respectively, of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a).[1]

Seacret applied to register the mark SEACRET in a stylized lettering. In its application, it listed various skin care products. A1-3, A350.[2] Seacret's application does not restrict the covered goods by trade channels or price. *Id.* The USPTO refused to register the SEACRET mark under § 2(d), finding that the mark, when used with the goods identified in the application, so resembles the SECRET marks that confusion is likely to result. A594-609. The goods identified in the SECRET registrations are "personal deodorant" and "body spray." A11. Like the SEACRET application, the SECRET registrations contain no restrictions.

The USPTO refused registration of the SEACRET mark based on a likelihood of confusion with the SECRET registrations. In determining whether a likelihood of confusion exists, two key factors are the similarity of the two marks and the similarity of the goods identified in Seacret's application and P&G's registrations. *See In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357 (CCPA 1973)[3] (setting forth the potentially relevant factors in a likelihood-of-confusion analysis under § 2(d)); *see also Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1366 (Fed. Cir. 2012) ("'Not all of the *DuPont* factors are relevant to every case, and only factors of significance to the particular mark need be considered.' For example, the Board

---

[1] The USPTO determines whether marks can be registered, but has no authority to determine parties' rights to use marks or other infringement issues. *See, e.g.*, *FirstHealth of Carolinas, Inc. v. CareFirst of Md., Inc.*, 479 F.3d 825, 828 (Fed. Cir. 2007). Whether Seacret wins or loses, this registration dispute will not affect its ability to use its mark.

[2] References to the Certified Administrative Record (June 25, 2015) (Dkt. No. 14) are identified as "A__."

[3] The CCPA was the predecessor to the Federal Circuit, which adopted the CCPA's decisions as binding precedents. *See South Corp. v. United States*, 690 F.2d 1368, 1370-71 (Fed. Cir. 1982) (en banc).

can 'focus ... on dispositive factors, such as similarity of the marks and relatedness of the goods.'") (citations omitted). In the final Office action refusing registration, the Examining Attorney cited the factors of similarities between the marks, the relatedness of the goods, and the fact that neither Seacret's application nor P&G's registrations had any limitations on their respective trade channels. A143-48. Likewise, in its decision affirming the refusal, the Trademark Trial and Appeal Board ("Board") emphasized the similarities between SEACRET and the SECRET marks in P&G's registrations; the similarities between the goods identified in Seacret's application and P&G's registrations; and the overlapping channels of trade. A594-609.

In support of its effort to reverse the Board's decision, Seacret has offered the opinion and testimony of Dr. Maronick as an expert witness.[4] As relevant to this motion, Dr. Maronick's report and testimony can be summarized as follows:

1. Dr. Maronick is not an expert in the personal care products field. Ex. 1, cited pages of deposition transcript of Thomas J. Maronick (Oct. 9, 2015) ("Tr."), 90:22-91:14.

2. Dr. Maronick is not a consumer of the products at issue in this case. *Id.* at 90:12-13.

3. Dr. Maronick is not an expert in trademark registration issues. *Id.* at 23:11-17.

4. Dr. Maronick does not have an understanding of how trademark registration considerations may differ from actual marketplace activities. *Id.* at 25:2-5.

5. Dr, Maronick offered his opinion based on his general knowledge of marketing, which takes into account actual market-place considerations. Ex. 2, Final Expert Report ("Final Rep.") e.g., 3 (noting experience "evaluating marketing practices"), 4-5 (discussing "use" of tagline when products are actually sold), 6 (discussing consumer's experience in a retail store and price of goods as actually sold); Tr. 25:2-26:19; 99:13-100:18.

6. Dr. Maronick's conclusion that the goods in the SEACRET application and SECRET registrations are different is based on his understanding that the products are sold through different trade channels in the marketplace. Final Rep. 5-6.

---

[4] Dr. Maronick's opinion and testimony constitute the vast majority of the new evidence Seacret offers to support its Motion for Summary Judgment.

4

7. Dr. Maronick testified that his opinion did not consider a comparison of the products absent a restriction of their trade channels because Dr. Maronick was not aware of whether or not there were any restrictions of trade channels in either the SEACRET application, Tr. 31:5-8, or the SECRET registrations. Tr. 31:14-17.

8. Dr. Maronick's conclusion that the products in the SEACRET application and SECRET registration differ is also based on his understanding that the actual selling price of the products in the marketplace differ. Final Rep. 6.

9. According to Dr. Maronick, the marks differ in part because the SEACRET mark contains an "A" and contains a "wavy" line connecting the letters "E" and "A."[5] These conclusions were based on his "ability to look at [the] marks." Tr. 131:19-132:11.

10. In forming his opinion about the differences in the marks, Dr. Maronick considered that the SEACRET mark is "always used with the words 'Minerals from the Dead Sea.'" Final Rep. 4-5; Tr. 80:12-17 ("Because that's the way I saw it in the *marketplace*." (emphasis added).

11. Dr. Maronick's opinion is also based on his "understanding"—obtained solely from representatives of Plaintiff—that there has been no actual confusion. Dr. Maronick did not take any steps to independently verify the lack of actual confusion. Tr. 83:4-86:10.

## ARGUMENT

**I. The Maronick Report is inadmissible because it is based on irrelevant suppositions about restrictions not found in the application and registrations in this case.**

**A. Evidence that narrows or is otherwise inconsistent with the scope of the marks and usages disclosed in Seacret's application and the SECRET registrations is irrelevant to a registrability determination.**

On review of the Board's findings under the relevant § 2(d) likelihood-of-confusion factors, the scope of permissible evidence is limited the same way it was at the USPTO: by the marks and usages shown on the face of the application and cited registrations. Evidence that seeks to narrow or is at odds with those disclosed usages is off limits. That is because such evidence at variance with a registration ignores the statutory protection afforded to registrants under § 7(b), which provides that a federal trademark registration on the Principal Register "shall

---

[5] As discussed in the USPTO's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment, the stylization of the SEACRET mark is legally insignificant.

5

be prima facie evidence . . . of the [registrant's] exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(b).

The Supreme Court's recent decision in *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293 (2015), recognized that in the context of a § 2(d) review, an "applicant's right to register must be made on the basis of the goods described in the application" and explained that "if an application does not delimit any specific trade channels of distribution, no limitation will be applied." 135 S. Ct. at 1300 (internal quotations and citation omitted). "The *usages listed in the application* . . . are critical." *Id.* (emphasis added). In other words, a § 2(d) registration review must be based on the full scope of the mark, goods, and usages in an application or registration and cannot be based on any limitation not expressly delineated.

Consistent with § 7(b) and *B & B Hardware*, the Federal Circuit and its predecessor court have long held that registrability must be determined on the basis of the identification of goods set forth in the application regardless of any evidence of actual marketplace usage—including the particular nature of an applicant's and registrant's goods, the particular channels of trade, or the class of purchasers to which the sales of the goods are directed—if such actual usage evidence differs from or is narrower than what is disclosed in the application. *Stone Lion Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 1323 (Fed. Cir. 2014); *Bose Corp. v. QSC Audio Prods., Inc.*, 293 F.3d 1367, 1377 (Fed. Cir. 2002); *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 948 (Fed. Cir. 2000); *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1407-08 (Fed. Cir. 1997); *In re Shell Oil Co.*, 992 F.2d 1204, 1207 n.4 (Fed. Cir. 1993); *Octocom Sys., Inc. v. Houston Computer Servs., Inc.*, 918 F.2d 937, 942 (Fed. Cir. 1990). The statute requires that courts "treat [a cited registration] as valid, entitled to the section 7(b) presumptions, and take it at face value."

*Contour Chair-Lounge Co. v. Englander Co.*, 324 F.2d 186, 188 (CCPA 1963). Therefore, an applicant like Seacret that is refused registration under § 2(d) cannot, in an *ex parte* proceeding, collaterally attack the validity or scope of a registration cited against it. *See Dixie Rests.*, 105 F.3d at 1408; *see also In re Calgon Corp.*, 435 F.2d 596, 598 (CCPA 1971). Such attempts to narrow the goods in a registration can take place only in a cancellation proceeding *against the registrant* under § 14 of the Lanham Act, 15 U.S.C. § 1064, or a partial cancellation proceeding under § 18, 15 U.S.C. § 1068—*not* in an *ex parte* proceeding.[6] *See Dixie Rests.*, 105 F.3d at 1408; *Calgon Corp.*, 435 F.2d at 598. This is consistent with the bedrock principle that a tribunal may not ordinarily adjudicate the rights of a party not before it. *See, e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999); *see also Richards v. Jefferson County*, 517 U.S. 793, 798 (1996); *Hansberry v. Lee*, 311 U.S. 32, 40-41 (1940). Put simply, this is not the proper forum or proceeding for Seacret to seek to limit the SECRET registrations.[7] Instead, the review here must be based on the full scope of goods and usages in the Seacret application and in the SECRET registrations, without any limitations not expressly delineated in those documents.

Under the Federal Rule of Evidence 401(b), evidence must be relevant, and that requires, *inter alia*, that the fact that it is intended to prove be "of consequence in determining the action," *i.e.*, material. And it is settled that "the substantive law will identify which facts are material."

---

[6] Likewise, a party seeking to narrow its own application must do so by amending the application during the administrative process. A party cannot narrow its application by presenting evidence in a later court proceeding. Again, as the Supreme Court has recognized, it is the delineations in the application that are critical, and any limitations not contained in an application are irrelevant in a registration proceeding. *B & B Hardware*, 135 S. Ct. at 1300.

[7] Other district courts that have considered similar arguments by a dissatisfied applicant employing the same tactic have reached the same conclusion. *See, e.g., Hayashi v. Godici*, No. CV 01-05783-SVW, slip. op. at 13 (C.D. Cal. July 3, 2002) (copy attached as Ex. 3); *Hayashi v. Godici*, No. CIV. A. 3:02MC-1-S, 2002 WL 511499 (W.D. Ky. Mar. 7, 2002) (quashing the applicant's attempt to subpoena information from the registrant about the registrant's business, use of the registered mark, and channels of trade, for use in an *ex parte* proceeding).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, the question of likelihood of confusion must be determined based on the scope of the application and registrations at issue, not limitations derived from evidence of the parties' purported marketplace uses. *E.g.*, *Stone Lion Capital*, 746 F.3d at 1323, *Bose*, 293 F.3d at 1377; *Cunningham*, 222 F.3d at 948. Evidence purporting to limit or otherwise alter the scope of any application or registration—whether it be the marks, the goods involved, the channels of trade, or the classes of customers—is irrelevant and therefore inadmissible in a § 2(d) registrability proceeding.

**B. Dr. Maronick's opinion is informed by his "understanding" of facts at odds with the unrestricted SEACRET application and unrestricted SECRET registrations, and as such must be excluded as irrelevant.**

Despite this settled law, the use of evidence that varies from and seeks to narrow the application and registrations at issue is at the core of Seacret's arguments in this case. As relevant to this motion, such evidence forms the basis of Dr. Maronick's opinion. His theory about why confusion is unlikely turns on facts outside the four corners of, and at variance with, what is disclosed in the SEACRET application and the SECRET registrations. And Seacret's reliance on Dr. Maronick's testimony in its Memorandum in Support of Plaintiff's Motion for Summary Judgment goes to limitations not disclosed in the SEACRET application or the SECRET registrations, thus contrary to *B & B Hardware* and § 7(b).

Dr. Maronick's "analysis" begins with a fundamental mistake: although the application is for the mark SEACRET (stylized) alone, his comparison uses "SEACRET" together with the tagline "MINERALS FROM THE DEAD SEA," which he says is "always," Final Rep. 4-5, or "almost always," *id.* at 9, used with the SEACRET mark. But precedent under § 2(d) makes clear that any arguments that confusion is unlikely due to use of additional marks or taglines not set forth in the application are irrelevant, because the applicant can stop or change use of such other

8

marks or taglines at any time. *See, e.g.*, *In re Shell Oil Co.*, 992 F.2d 1204, 1208 n.4 (Fed. Cir. 1993) (rejecting Shell's argument that its use of the house mark SHELL with the mark at issue, which did not include SHELL, would weigh against confusion); *In re H.J. Seiler Co.*, 289 F.2d 674, 675 (CCPA 1961) (rejecting applicant's argument that confusion can be avoided by its use of a tagline that did not appear as part of the mark in the application). If this were not the law, an applicant could obtain a registration based on a limitation (use of second mark) that will not appear on the registration certificate and could jettison it as soon as it obtained the registration.

Dr. Maronick next purports to opine that the goods in P&G's registrations are sold only through mass retailers. Final Rep. 5, 10-11. But P&G's registrations contain no limitation on channels of trade. Undeterred, Dr. Maronick then contrasts his supposition about how P&G limits distribution of its goods with the statement that Seacret's goods are marketed only through a large direct marketing network, not through mass retailers. *Id.* at 5-6, 10. But, similarly, Seacret's application contains no limitation whatsoever on channels of trade. As with use of additional marks not in the application, evidence about actual trade channels is irrelevant, because the registration Seacret seeks contains no such limitations to the normal and usual trade channels for the goods. If Seacret would prevail by relying on evidence showing particular trade channels to obtain an unrestricted registration, it could begin selling to mass retailers immediately and still be within the scope of the registration. As to P&G, its unrestricted registration by law covers all the usual means of marketing, *see, e.g.*, *Coach Servs.*, 668 F.3d at 1370; *In re Viterra Inc.*, 671 F.3d 1358, 1362 (Fed. Cir. 2012), which would include direct marketing.[8] Thus, registration precedents under § 2 prohibit evidence restricting channels of

---

[8] As explained *infra*, p. 7, Congress specifically created a forum (the Board) and a remedy (partial cancellation under § 18 of the Lanham Act, 15 U.S.C. § 1068), for Seacret to try

9

trade where the application and registrations at issue have no such restrictions.[9] *See, e.g.*, *B & B Hardware*, 135 S. Ct. at 1300 (recognizing that "if an application does not delimit any specific trade channels of distribution, no limitation will be applied"); *Octocom Sys.*, 918 F.2d at 943 (holding that "an application with an identification of goods having no restriction on trade channels obviously is not narrowed by testimony that the applicant's use is, in fact, restricted to a particular class of purchasers"); *CBS Inc. v. Morrow*, 708 F.2d 1579, 1581 (Fed. Cir. 1983) ("[I]n the absence of specific limitations in the application and registration," a registration dispute focuses on "the normal and usual channels of trade and methods of distribution. The description of the goods in an application for registration is critical because any registration that issues will carry that description. Moreover, although a registrant's current business practices may be quite narrow, they may change at any time from, for example, industrial sales to individual consumer sales." (citations omitted)).[10]

Dr. Maronick also bases his opinion on alleged differences in the current prices that Seacret and P&G currently charge for the goods at issue. Final Rep. 6, 11. For the precise same reason—that neither the application nor the registration contain any price limitations—these supposed distinctions could change at any time and are therefore irrelevant in registration disputes under § 2(d). *See, e.g.*, *Luzier Inc. v. Marlyn Chem. Co.*, 442 F.2d 973, 974-75 (CCPA

---

to prove that P&G's registrations should be limited to exclude direct marketing, if P&G does not use that trade channel. But Seacret may not litigate that issue in this *ex parte* registration proceeding.

[9] Dr. Maronick's mistaken belief that evidence of trade channels at variance with the application and registrations is relevant is explained by his admission that he does not know how trade channels are assessed in the registration process (Tr. 28:7-10), and does not know whether Seacret's application has any restriction on trade channels (Tr. 31:5-9).

[10] The public benefit of this rule is that the public can have confidence, simply by looking at a registration, what rights are claimed by the registrant.

1971) (rejecting as irrelevant alleged distinctions in price and manner of sales where "[t]here is nothing in opposer's registration nor in the description of goods in applicant's applications to restrict the goods to any price range, method of marketing, packaging quantities, or class of purchasers"); *Whitehall Pharmacal Co. v. Denney*, 255 F.2d 693, 695 (CCPA 1958) (rejecting asserted price differential where the application and registration at issue had no such limitations, because "[n]ot only may prices be changed at the whim of the manufacturer, but it is common for a single maker to sell both luxury goods and necessary commodities").

In sum, Dr. Maronick's opinion expressly relies on several limitations that are not reflected in the SEACRET application or the SECRET registrations. Those distinctions are irrelevant in a registration dispute under § 2(d), which must be based only on the expressly delineated limitations in the application and registrations. Because his opinion on likelihood of confusion necessarily and expressly hinges on these irrelevant considerations, both his opinion about how each factor weighs, as well as his ultimate conclusion on likelihood of confusion, must be excluded.

**II.  Dr. Maronick's report consists merely of unsupported conjecture.**

The disconnect between Dr. Maronick's qualifications and the subject matter of his opinion also renders his opinion unreliable, and thus inadmissible. Under Federal Rule of Evidence 702, trial judges act as gatekeepers to ensure that any expert testimony "is not only relevant, but reliable." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993)). Therefore, a trial judge must conduct a preliminary assessment to ensure that the reasoning or methodology underlying any expert testimony is scientifically or technically valid and is applicable to the facts

at issue.[11] *Cooper*, 259 F.3d at 199. The proponent of the expert testimony must establish its admissibility by a preponderance of proof. *Id.* As explained below, Dr. Maronick's testimony is unreliable and therefore should be excluded.

In likelihood of confusion disputes, there are commonly two kinds of experts who give two kinds of testimony. One category is the opinion of marketing academics and professionals who have experience and education in conducting and evaluating consumer surveys. *See generally* 4 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:2.75, at p. 23-24 (4th ed. 2015) (*hereinafter* "MCCARTHY"). Dr. Maronick has offered no consumer survey in this case.[12]

The second common category of expert testimony is that of persons with experience or expertise in particular industries concerning practices in those industries. *See id.* Dr. Maronick does not claim to have experience or first-hand knowledge with either Seacret or P&G, their products, or their marketing practices (apart from what he learned from information provided to him by Seacret in this case). Nor does he claim to have any kind of specific expertise or

---

[11] The Supreme Court in *Daubert* identified several factors that may bear on the reliability determination, including "(1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community." *Cooper*, 259 F.3d at 199.

[12] Even in cases where Dr. Maronick has offered opinion based on survey evidence, those opinions have been, in some cases, excluded or given no weight. *See Am. Nat'l Ins. Co. v. Am. Nat'l Investment Advisors, LLC*, No. 11-cv-4016, 2014 WL 6613342, at *16-*17 (N.D. Ill. Nov. 21, 2014 (according Dr. Maronick's survey "little weight" because his survey did not contain data concerning a proper control stimulus); *In re Front Loading Washing Mach. Class Action*, No. 08-0051, 2013 WL 3466821, at *7 (D.N.J. July 10, 2013) (excluding an anonymous Internet survey Dr. Maronick administered); *Salon Fad v. L'Oreal USA, Inc*., No. 10-5063, 2011 WL 4089902, at *10 (S.D.N.Y. Sept. 14, 2011) (finding Dr. Maronick's survey "riddled with methodological flaws").

experience in the personal care product industry. Tr. 90:22-91:14. Yet that is precisely what his opinion concerns.

The lack of "fit" between Dr. Maronick's qualifications and his opinion requires exclusion of his Report. As a leading treatise has stated: "Even where a witness has special knowledge or experience, qualification to testify as an expert also requires that the area of the witness's competence matches the subject matter of the testimony." 29 Charles Alan Wright and Victor J. Gold, FEDERAL PRACTICE AND PROCEDURE § 6265, at pp. 255-56 (West ed. 1997). Although Dr. Maronick has an academic marketing background that appears to fit that needed to render an opinion about consumer surveys, there is, as noted, no survey here. Rather, Dr. Maronick has opined on consumer perceptions without conducting a survey, making his opinion no different than that of any other person. Indeed, here, the opinion he offers is not even that of a consumer of the relevant products, since he does not consume these products. Tr. 90:12-13.

In other cases, Dr. Maronick's opinion on consumer perception has been excluded as "speculative" and "unsupported." For example, In *FTC v. Washington Data Resources*, No. 8:09-cv-2309, 2011 WL 2669661, at *2 (M.D. Fla. July 7, 2011), the court excluded Dr. Maronick's proposed expert testimony that "a reasonable consumer is not likely to be misled by the actions or marketing practices of the Crowder Law Group," citing reasons applicable here. The court held:

> Maronick's opinion derives from an incomplete review of pertinent evidence and depends upon an unverified, unsupported, and speculative claim. Most importantly, Maronick's conclusion as to the perception of a "reasonable consumer" appears purely speculative, apart from any scientific or technical knowledge or method, and unhelpful because the speculation rests entirely on Maronick's unlearned prediction of consumer reaction and consumer perception. Maronick's proposed testimony concerns a matter within the ken of the fact finder, subject to primary evidence from consumers, and to which

> Maronick adds no reliable expert opinion but only one person's opinion, which is no better than another person's opinion.

*Id.* at *2.

In *Johns v. Bayer Corp.*, No. 09-cv-1935, 2013 WL 1498965 (S.D. Cal. April 10, 2013), the court excluded Dr. Maronick's proposed opinion on behalf of the plaintiffs concerning the effect Bayer's marketing would have on consumers—even where he had reviewed internal documents Bayer produced in litigation—because, "apart from his short conclusion and summary opinion, 11½ pages of Dr. Maronick's 12 page report is nothing more than a synopsis of Bayer's marketing of the Vitamin Products during and before the Class Period, quoting extensively from both third-party market research reports and Bayer's own internal documents," and plaintiffs were free to offer the underlying documents. *Id.* at *28.

And in *New Look Party Ltd. v. Louise Paris Ltd.*, No. 11 Civ. 6433, 2012 WL 251976 (S.D.N.Y. Jan. 11, 2012), the court gave "no weight" to Dr. Maronick's opinion on how consumer behavior impacts allegations of lost sales where he testified that he "based his conclusion on '[j]ust logic' that if a person buys a product, she probably will not buy that same product from another source." *Id.* at *10 n.8.[13]

Here, as in the *Washington Data Resources*, *Bayer*, and *New Look* cases, Dr. Maronick has based his opinion that consumers will likely be confused, not on valid objective survey data, and not on any professed experience or expertise in the industry at issue—but on his review of selected marketing documents. In other words, the proffered report does not satisfy the requirement that "the area of the witness's competence matches the subject matter of the

---

[13] *See also FTC v. Willms*, No. C11-828, 2011 WL 4103542, at *7 (W.D. Wash. Sept. 13, 2011) (finding Dr. Maronick's opinion about the non-deceptiveness of a party's website marketing materials "highly speculative").

testimony." 29 FEDERAL PRACTICE AND PROCEDURE § 6265, at pp. 255-56; *see also Oglesby v. General Motors Corp.*, 190 F.3d 244, 250-51 (4th Cir. 1999) (opinion testimony of a "concededly . . . qualified mechanical engineer" excluded as unreliable because his opinion concerned a specific issue outside his general background and he based it on "unsupported suppositions" about matters at issue in the case); *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001) ("The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas") (citation omitted). Dr. Maronick's report is not considered "expert" testimony; rather, it is mere conjecture as to a product field for which Dr. Maronick is admittedly not an expert.

At the end of the day, Dr. Maronick's report reads like a legal brief. There is no scientific, technical, or other specialized methodology or expertise applied. Accordingly, under Rule 702, the expert report should be excluded not only as irrelevant but also as unreliable.

## **Conclusion**

For the foregoing reasons, the Court should exclude the proffered expert testimony/report of Dr. Maronick.

Dated: December 18, 2015

        DANA J. BOENTE
        United States Attorney

By:    /s/
        DAVID MOSKOWITZ
        Assistant United States Attorney
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Tel.: (703) 299-3845
        Fax: (703) 299-3983
        David.Moskowitz@usdoj.gov

*Counsel for Defendants*

*Of Counsel*:

THOMAS W. KRAUSE
Acting Solicitor

CHRISTINA J. HIEBER
Senior Counsel for Trademark Litigation

MARY BETH WALKER
THOMAS L. CASAGRANDE
Associate Solicitors
United States Patent and Trademark Office
P.O. Box 1450, Mail Stop 8 – Office of the Solicitor
Alexandria, VA 22313-1450

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2015, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

John Edward Curtin
jcurtin@cappat.com
Capitol Patent & Trademark Law Firm PLLC
8221 Old Courthouse Road
Suite 370
Vienna, VA 22182
703-266-3330
*Counsel for Plaintiff*

                                            /s/
                                    David Moskowitz
                                    Assistant United States Attorney
                                    2100 Jamieson Avenue
                                    Alexandria, Virginia 22314
                                    Tel.: (703) 299-3845
                                    Fax: (703) 299-3983
                                    David.Moskowitz@usdoj.gov

                                    *Counsel for Defendants*