**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **SEACRET SPA INTERNATIONAL, LTD.**,<br><br>Plaintiff,<br><br>v.<br><br>**MICHELLE K. LEE**, Director of the United States Patent and Trademark Office,<br><br>and<br><br>THE UNITED STATES PATENT AND TRADEMARK OFFICE,<br><br>Defendants. | Case No. 1:15-cv-405-JCC-IDD |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE OPINION OF THOMAS J. MARONICK**

Plaintiff, Seacret Spa International, LTD. ("Seacret Spa"), respectfully submits this memorandum in opposition to Defendants' motion to exclude ("Motion") the opinion of Seacret Spa's expert on consumer confusion, Dr. Thomas J. Maronick. As explained below, Defendants cherry-pick portions of Dr. Maronick's October 12, 2015 "Final Expert Report" (hereinafter the "Expert Report") and Dr. Maronick's deposition testimony (hereinafter the "Testimony"), to reach an unsupported conclusion that Dr. Maronick's Testimony and Expert Report should be excluded. Dr. Maronick is qualified to testify regarding factors relevant to a determination of likelihood of confusion, and his Testimony and Expert Report are relevant to that determination. Consequently, Defendant's motion to exclude should be denied.

## INTRODUCTION

Defendants chose not to provide an expert in support of their positions, and now attempt to prevent the Court from considering testimony from Seacret Spa's expert, Dr. Maronick. The Court should deny Defendants' Motion.

This action was filed to seek review of a refusal by the USPTO under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), to register Plaintiff's stylized SEACRET mark, because the USPTO considered it to be confusingly similar to two previously-registered SECRET marks owned by the Procter and Gamble Company ("P&G"). Defendants' claim that Dr. Maronick's Expert Report should be excluded because it offers irrelevant and improper testimony that erroneously seeks to narrow the SEACRET application and SECRET (also referred to as "P&G") registrations, and because Dr. Maronick is not a properly qualified expert to offer the opinion he offers in this matter. Plaintiff strongly disagrees with Defendants' claims. Dr. Maronick is qualified, based on his extensive experience related to marketing and consumer behavior, to offer his opinions in this matter, and the opinions offered are directly relevant to a determination of liklihood of confusion.

## BACKGROUND

This action is being brought pursuant to 15 U.S.C. § 1071(b)(3) seeking review of the USPTO's refusal to register Plaintiff's SEACRET mark. The SEACRET application is for the goods "Products containing ingredients from the Dead Sea, namely, non-medicated skin care preparations, namely moisturizers, facial cleansers, facial peels, masks, lotions, creams, scrubs, soaps, nail care preparations, hand creams, cuticle oils; after shave" in international class 3. Certified Administrative Record, Dkt. No. 14 ("R.") at 562. The P&G registrations are for the goods "personal deodorant" and "body spray." *Id.* At 25-27.

The USPTO refused registration of SEACRET because it found that the mark, when used with the goods listed in the SEACRET application, resembled the P&G marks such that confusion would likely result. *Id.* at 594-609. More specifically, the Examining Attorney noted similarities between the marks, relatedness of the goods, and lack of limitations on the trade channels in the registration refusal. *Id.* at 143-148. The Trademark Trial & Appeal Board (TTAB) affirmed the

refusal, and noted similarities between the marks, similarties in the goods in the SEACRET application and P&G registrations, and overlapping channels of trade as factors. *Id.* at 594-609.

In their Motion Defendants admit that two of the key factors in determining whether a liklihood of confusion exists are the similarity of the marks, and the similarity of the goods identified in the SEACRET application and P&G registrations. Memorandum in Support of Defendants' Motion to Exclude Opinion of Thomas J. Maronick, Dkt. No. 30 ("Dkt. 30") at 3. In providing background for their argument in support of their motion to exclude, Defendants, in attempting to summarize Dr. Maronick's Expert Report and Testimony, cherry-pick and/or mischaracterize a number of items from the Expert Report and Testimony in an apparent effort to bolster their arguments. For example:

1. Defendants cite to a response Dr. Maronick gave to a question in an isolated section of his Testimony (specifically referring to page 90, paragraph 22 through page 91 paragraph 14 of Dr. Maronick's deposition transcript) to claim that he is not an expert in the "personal care product field." *Id.* at 4. "Personal care product field" is not defined, and a reference to the context of the question reveals that Dr. Maronick was specifically responding with respect to pricing of certain products, and with respect to products "we were just discussing" (which, based on the transcript, were moisturizers). *See* Ex. A, cited pages of deposition transcript of Thomas J. Maronick (Oct. 9, 2015) ("Tr."), 89:4-91:18. Clearly, Dr. Maronick believes himself to be an expert capable of providing relevant opinion in this matter (he notes at Tr. 91:5 that he is a marketing expert), and taking this isolated statement referencing an undefined term and attempting to bootstrap it into an implication that he, therefore, is not an expert capable of providing relevant testimony on the issue of liklihood of confusion is a bridge too far.

2. Defendants cite to another fragment of the Testimony (Tr. 90:12-13) to claim that he is not a consumer of the "products at issue in this case." Dkt 30. at 4. However, the specific product referenced in that fragment is moisturizers, and certainly does not

encompass all of the products at issue in this case (such as, for example, personal deodorant). Tr. at 90:12-13. Again, Defendants take a limited statement out of context, and generalize it to attempt to make it categorically apply to every product relevant in this matter in order to support their argument, when the statement does not support that.

3. Defendants claim that Dr. Maronick is not an expert in trademark registration issues (Dkt. 30 at 4). However, Dr. Maronick does not claim to be an expert in trademark registration issues. Furthermore, Defendants provide no support that such expertise is a prerequisite to rendering an opinion on factors that are relevant to a likelihood of confusion determination.

4. Defendants claim that Dr. Maronick does not understand how trademark registration considerations may differ from actual marketplace activities. *Id.* Again, however, Defendants provide no support as to why such understanding would be required to develop an opinion regarding the factors that are relevant to a determination of likelihood of confusion.

5. Defendants claim that Dr. Maronick offered his opinion based on general knowledge of marketing, which takes into account actual market-place considerations. *Id.* They imply that this was somehow the only basis for his opinion, and that factoring in such considerations is somehow improper. In fact, in addition to "marketing practices", "use of taglines", "consumer's experience", "price of goods", and other items Defendants might refer to as "actual market-place considerations" (*Id.*), Dr. Maronick also clearly reviewed the marks, their characterisics, distinctions, spelling, distinctiveness, web sites of the companies, the products themselves, the P&G trademark registrations and SEACRET application, not all of which fall into the "actual market-place considerations" of concern to Defendants. Tr. at 72, 81-82, 87, 125, 128.

6. Defendants claim that Dr. Maronick's conclusion that the goods are different is based on his understanding that the products are sold through different trade channels (referring to pages 5 and 6 of the Expert Report). Dkt.30 at 4. This is simply not a true, as the

conclusion reached on those pages discusses the differences in methods of distribution of the products, not in whether the products are "different." *See* Ex. B, Final Expert Report ("Rpt.") at 5-6.

In spite of Defendants' erroneous characterizations and conclusions with respect to Dr. Maronick's Testimony and Expert Report, both Dr. Maronick's Testimony and Expert Report meet the legal standards for admissibility. Generally, evidence is admissible if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. ("Rule") 401. Further, regarding expert testimony, Rule 702 is to be applied with "the 'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to 'opinion testimony.'" *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 588 (1993). [1]

An expert's testimony need only assist the trier of fact and relate to, or "fit," the underlying facts of the case. *Daubert,* 509 U.S. at 591. The district court must determine whether the "particular expert ha[s] sufficient specialized knowledge to assist the [trier-of-fact] 'in deciding the particular issues in the case.'" *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S. Ct. 1167, 1178, 143 L.Ed.2d 238 (1999)(jury trial). In making its initial determination of whether testimony is sufficiently reliable, this Court has broad latitude to consider whatever factors bearing on validity the Court finds to be useful. The particular factors will depend upon the unique circumstances of the expert testimony involved. *Id* at 1175-1176. As with all other admissible evidence, expert testimony is subject to testing by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert, 509 U.S. at 596.*

---

[1] Internal citations and quotations omitted.

**ARGUMENTS**

I. **Dr. Maronick's Expert Report & Testimony Are Admissible.**

   a. **Evidence included in the Expert Report and Testimony Are Relevant To A Registrability Determination.**

Defendants claim that Dr. Maronick's Expert Report is based on irrelevant suppositions about restrictions that are not present in the SEACRET application and P&G registrations, and imply that Dr. Maronick's Expert Report and Testimony are an attempt to narrow the scope of the P&G registrations and SEACRET application. First, this is simply not the case. Dr. Maronick's comprehensive discussion of the multiple factors bearing on whether or not a consumer is likely to be confused in the real world at a minimum provide context to the overall likelihood of confusion analysis. Furthermore, Dr. Maronick has never stated or implied that because of the "real world" sale and marketing of the products in question, either party's registration scope has been or should be narrowed.

More importantly, however, the Expert Report and Testimony clearly point out that multiple factors were evaluated by Dr. Maronick. *See* Rpt. at 4-7. At least two of these, (the similarity of the marks themselves, and the similarity of the goods) do not deviate from what is listed in the SEACRET application and P&G registrations. Dr. Maronick's evaluation of the similarity of the marks clearly deals with the marks as listed in the P&G registrations and SEACRET application, and is relevant to a determination of whether or not there is a likelihood of confusion. Tr. at 69, 72, 81, 125. Furthermore, Dr. Maronick's evaluation of the similarity of the products deals with the products as listed in the P&G registrations and SEACRET application. Although Dr. Maronick ALSO provides ADDITIONAL evaluation related to pricing, channels of distribution, consumer sophistication, and other elements that might not be directly limited in the P&G registrations and SEACRET application, the fact remains that Dr. Maronick's Expert Report and Testimony do address at least the two key factors of the respective mark characteristics and products.

As noted above, the USPTO, the TTAB, and Defendants all agree that similarity of the marks and similarity of the goods are key factors in the likelihood of confusion analysis for purposes of

registration. Furthermore, Defendants admit that the TTAB also noted overlapping channels of trade as a factor in its finding of likelihood of confusion, arguably making that additional factor (channels of trade) relevant for purposes of this analysis. Dkt. 30 at 4. In evaluating channels of trade the TTAB looked beyond the descriptions of the P&G registrations to third party uses to argue that, because third parties marketed their products in both P&G channels and SEACRET channels, the P&G products might overlap with the SEACRET channels. In a similar fashion, Plaintiff and Dr. Maronick look beyond the P&G descriptions and the SEACRET application descriptions to evaluate whether those channels will overlap. While it is believed that the P&G channels are not likely to change because the channels have been limited for years, and because P&G uses other trademarks to identify its goods that are more similar to the SEACRET products it is nevertheless appropriate to consider both arguments, which consider factors <u>beyond</u> the actual descriptions of the P&G registrations and the SEACRET application.

Regardless, it is clear that the Expert Opinion and Testimony are not solely based on, or directed to, issues that might be considered "irrelevant" simply because they are not express limitations listed in the SEACRET application or P&G registrations. On the contrary, the Expert Opinion and Testimony are clearly directed to, and based on, relevant factors tied directly to the limitations of the SEACRET application and P&G registrations, at least as it pertains to similarity of the marks and similarity of the products. For at least this reason, Defendants contention that the Expert Opinion and Testimony of Dr. Maronick should be excluded because they are irrelevant to a registrability determination should fail.

    **b. Dr. Maronick's opinion is not "at odds" with the application and registrations.**

Defendants further claim that Dr. Maronick's opinion should be excluded because it is "informed by" his understanding of facts purportedly at odds with the SEACRET application and P&G registrations. Defendants assert that evidence related to "taglines", channels of distribution and pricing is irrelevant because limitations with respect to those elements are not found in the SEACRET application or the P&G registrations, and that consequently, Dr. Maronick's Expert Report and Testimony should be excluded. However, as was noted above, this position completely

ignores the fact that, notwithstanding Defendants' position with respect to those elements, Dr. Maronick's Expert Report and Testimony clearly deal with at least two likelihood of confusion limitations that ARE found in the SEACRET application and the P&G registrations, namely, the similarity of the marks, and the similarity of the goods.  As noted above, Defendants have admitted that these two factors are relevant to a likelihood of confusion determination.  Furthermore, Defendants have not denied that the Dr. Maronick's Expert Report and Testimony address, and rely upon, on these elements – they simply ignore that fact because it doesn't line up with their desired narrative.

In addition, in addressing the purported irrelevance of Dr. Maronick's references to, and analysis of, channels of trade, Defendants note that (quoting from a 1983 Federal Circuit case) a registration dispute focuses on "the normal and usual channels of trade and methods of distribution." Dkt. 30 at 10.  Clearly then, Dr. Maronick's analysis of channels of trade is relevant, at the very least because it goes to the issue of evaluating what those normal and usual channels of trade and methods of distribution are as it relates to the goods and services at issue.  In other words, regardless of the relevance of Dr. Maronick's Expert Report and Testimony with respect to "restricting" the channels of trade, they are at least relevant for defining and determining what those normal and usual channels of trade and methods of distribution are for purposes of a likelihood of confusion analysis.

In conclusion, Defendants incorrectly state that Dr. Maronick's opinion "necessarily and expressly hinges on" what the Defendants conclude are irrelevant limitations not present in the SEACRET application and P&G registrations.  However, they provide no support for the "necessarily and expressly hinges on" assertion, and completely ignore the fact that at least two limitations that ARE present in both the SEACRET application and P&G registrations (and that therefore are, without question, relevant), the marks themselves and the goods, <u>are</u> specifically addressed and utilized in the Expert Report and Testimony, namely,  the similarity of the marks and the similarity of the goods.  For at least this reason, Defendants contention that the Expert Opinion and Testimony of Dr. Maronick should be excluded because they are irrelevant to a registrability determination should fail.

**II.     Dr. Maronick's report does <u>not</u> consist "merely of unsupported conjecture"**

Defendants claim that there is a "disconnect" or "lack of fit" between Dr. Maronick's qualifications and his opinion, and that consequently, his report must be excluded.

Dr. Maronick has a Doctorate in Business Administration from the University of Kentucky with a major in marketing, and currently teaches both undergraduate and graduate courses in strategic marketing and marketing research at Towson University. Rpt. at 2. He has taught at Towson for at least 28 years. Tr. at 39. He has taught courses in consumer behavior. Tr. 39: 10-14. Those consumer behavior courses include discussion related to personal care products and behaviors of people when those products are purchased. Tr. 39: 21- 40:2. Dr. Maronick has taught as an adjunct professor at American University, George Washington University, and at a college in Maryland. Tr. 40: 13-19. He was Director of the Office of Impact Evaluation in the Bureau of Consumer Protection at the FTC for 16 years, where he was responsible for evaluating information submitted by entities being investigated by the FTC, and for designing and implementing all consumer research undertaken by the Bureau. Tr. 41:5 – 44:12. In that capacity, he served as the in-house marketing expert. Tr. 43: 5-8. At the FTC, consumer interpretation of ads and trademarks fell into the areas he would be asked to review. Tr. 45: 22 – 46:2. He has also published numerous papers in marketing, consumer, and business publications. Ex. C, Curriculum Vitae of Thomas Joseph Maronick (Dkt. 23-18) ("CV"). His specialties include consumer behavior, marketing, and survey research. Tr. 103: 8-10. He has studied instances of likelihood of confusion and actual confusion. Tr. 105: 6-12. He has testified as an expert AT LEAST 55 times in the last four years in cases, some of which have involved likelihood of confusion in a trademark context. Tr. 54:1-55:21. Nearly all of Dr. Maronick's cases have involved consumer issues, including consumer confusion. In preparing his report, he relied on, among other things, his experience, including his FTC experience, 35 years of marketing teaching experience, his experience having a doctorate and MBA in marketing, and his experience as an expert witness for plaintiffs and defendants in cases involving consumer confusion. Tr. 116: 15-21. During his Testimony, Dr. Maronick also testified that he has knowledge with respect to how trade channels are assessed in terms of a marketing strategy and the

possibility of a likelihood of confusion (Tr. 28:10-22), and that he had course training in consumer behavior and consumer purchase behavior (Tr. 38:2-9).

In spite of all of the above, Defendants appear to only admit that Dr. Maronick has a marketing background, and that he is qualified to provide an opinion about consumer surveys (a convenient concession, given that no survey is involved here). However, Defendants provide no basis for so limiting Dr. Maronick's testimony. Given the breadth of Dr. Maronick's experience and knowledge with respect to marketing, consumer behavior, and consumer confusion Dr. Maronick is clearly qualified to provide testimony with respect to a determination of a likelihood of confusion as it relates to the use of particular marks, and knowledge of how consumers are likely to respond (consumer behavior). It should be obvious that years of experience studying, teaching, and working in marketing and consumer behavior provide Dr. Maronick the unique ability to help understand how consumers are likely to respond to various marks, and if confusion is likely to result in various circumstances. As noted by Dr. Maronick, it is this experience on which he relied to evaluate the various factors related to likelihood of confusion. For example, Dr. Maronick relied on his understanding of consumer behavior and consumer confusion in his Expert Report (e.g. Rpt. at 5), and in his Testimony, specifically discussing consumer confusion in the context of comparing the marks (Tr. 26: 9-19, 72: 21-73:2), likelihood of confusion and actual confusion (Tr. 98:15-100:8), and likelihood of confusion with respect to consumer behavior and packaging (Tr. 131:5-18).

In light of all of the above, Dr. Maronick is an expert qualified by "knowledge, experience, skill, expertise, training, or education" in the relevant fields of marketing and consumer behavior. *See* Fed. R. Evid. 702. He is competent in the area of consumer behavior and consumer confusion, and used his knowledge (applied it) in these areas to develop his Expert Report and Testimony with respect to relevant elements with regard to likelihood of confusion. Consequently he is qualified to provide testimony with respect to the key issue in this case - likelihood of confusion.

In addition, Defendants again refer to fragments of Dr. Maronick's Testimony (the same fragments discussed further above) in an attempt to make unsupported claims. They use one excerpt to claim that he does not have expertise in the "personal care product industry". However, as noted

above, the context of that interchange was pricing, and specifically related to moisturizers. Furthermore, in that exchange, Dr. Maronick did claim to have relevant marketing expertise. Defendants also use an excerpt to claim that Dr. Maronick lacks familiarity with the products at issue ("he does not consume these products"), when the fact is that there is no evidence to support this contention. For example, there is no evidence that Dr. Maronick does not consume personal deodorant.

In fact, contrary to Defendants implications, in other areas of the Testimony, Dr. Maronick clearly demonstrates relevant knowledge and familiarity about the products at issue. He indicated that he had reviewed pricing-related documents for the SEACRET products and had reviewed a number of SEACRET websites and had an understanding of what the products were. Tr. 32:15-22. He indicated that he had looked at the marks themselves, their characteristics and distinctions, and at P&G's websites. Tr. 72:12-73:18. He indicted familiarity with the differences between the products themselves (for example, antiperspirant vs. skin care). Tr. 75:2-76:2. He used his familiarity with the marks in his analysis. Tr. 81:6-82:15. He physically inspected SEACRET and P&G products, and actually purchased a SEACRET product. Tr. 87:15-88:16. He was familiar with the trademark registrations. Tr. 125:8-12.

Finally, Defendants cite four instances in other cases in which Dr. Maronick's opinion has been excluded or given negative treatment, and attempt to use these unrelated cases to argue that his opinion should be excluded in this case. First, to the extent that the treatment of Dr. Maronick's testimony in unrelated cases has any relevance in this matter, the fact that Defendants only cite four cases with negative treatment given the extensive participation by Dr. Maronick in other cases should, if anything, weigh in favor of NOT excluding it in this case. Dr. Maronick has testified as an expert AT LEAST 55 times in the last four years in cases, some of which have involved likelihood of confusion in a trademark context. Tr. 54:1-55:21; see Ex. D,, Dr. Maronick's List of Cases. Nearly all of Dr. Maronick's cases have involved consumer issues, including consumer confusion. In addition, the number of cases in which he has provided testimony is significantly <u>smaller than</u> the number of times he has written an expert report. Tr. 54:7-13. In that context, Defendants' citation

of four instances of negative treatment (out of at least 55 instances of testimony in the last four years) does not support automatically extrapolating that negative treatment to apply in this case. If anything, it appears to support NOT excluding it. Furthermore, the decision whether to admit or exclude testimony is an evaluation that is highly dependent on the unique circumstances in each individual case. For at least this additional reason, the treatment of Dr. Maronick's testimony in other cases is not relevant to the determination of admissibility in this case.

### III. Excluding Dr. Maronick's Testimony Serves No Purpose in a Bench Decision Context

In addition to recognizing the liberal standards of admitting expert testimony outlined above at the outset, it is important to meaningfully apply those standards in the actual context of the present case, specifically recognizing that this is a decision where the trier-of-fact is the Court, and not a jury. Accordingly, the application of Rule 702 is different, namely, the liberal standards for allowing expert testimony are relaxed. Indeed, "[t]he 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial [or decision]." *Traxys North America, LLC v. Concept Mining, Inc.*, 808 F.Supp.2d 851, 853 (W.D. Va. 2011) (words in brackets added) (citing *Deal v. Hamilton Cnty. Bd. Of Educ.*, 392 F.3d 840,852 (6th Cir. 2004)). ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.")." *U.S. v. Wood*, 741 F.3d 417, 425 (4th Cir. 2013).

Excluding Dr. Maronick's testimony in this instance would be completely pointless, serving no purpose. Because this is a bench trial, there is no jury to "protect" from the evidence. This Court is certainly capable of evaluating the evidence and determining how much weight to give to it. In sum, this Court should deny Defendants' Motion and admit the Testimony and Expert Report of Dr. Maronick.

### CONCLUSION

Dr. Maronick has clear expertise and experience, including marketing and consumer behavior as it relates to consumer products. He applied that expertise in opining, both in his Testimony and Expert Report, to facts and issues directly relevant to the key issue of whether or not

there is a likelihood of confusion with respect to the SEACRET application and P&G registrations. Consequently, neither the Testimony nor the Expert Report should be excluded. To the extent that there is a concern with certain alleged shortcomings of Dr. Maronick's testimony, these can be addressed, while comporting with Rule 702's intended liberalization of the introduction of relevant expert evidence, by having those alleged shortcomings go to the weight of the testimony, and not its admissibility. This is especially true in light of the fact that this is a bench trial, where there is little or no danger of improperly prejudicing the trier-of-fact. Plaintiffs respectfully request that Defendants' Motion to exclude be denied.

DATED: January 8, 2016     BY: //
John E. Curtin, Esq. (VSB# 40852)
jcurtin@cappat.com
CAPITOL PATENT & TRADEMARK LAW FIRM,PLLC
 625 Slaters Lane, 4th Floor
Alexandria, Virginia 22314
Tel: (703)266-3330
Fax:(703)635-2213

Albert L. Schmeiser,Esq. (pro hac vice)
aschmeiser@iplawusa.com
Sean K. Enos,Esq. (pro hac vice)
kenos@iplawusa.com
SCHMEISER, OLSEN & WATTS, LLP
18 E. University Drive, Suite 101
Mesa, Arizona 85201
Tel: (480)655-0073
Fax: (480)655-9536

*Counsel for Plaintiff Seacret Spa International LTD.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the  8th  day of   January, 2016   , I electronically filed the foregoing PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINION OF THOMAS J. MARONICK with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

(1) Mr. David Moskowitz, Assistant United States Attorney
   David.Moskowitz@usdoj.gov
   2100 Jamieson Avenue
   Alexandria, VA 22314

(2) Ms. Mary Beth Walker (Associate Solicitor)
   marybeth.walker@USPTO.gov
   Mr. Thomas L. Casagrande (Associate Solicitor)
   Thomas.Casagrande@USPTO.gov
   United States Patent and Trademark Office
   P.O. Box 1450, Mail Stop 8 – Office of the Solicitor
   Alexandria, VA 22313-1450

(3) Ms. Christina J. Hieber (Senior Counsel for Trademark Litigation)
   Christina.Hieber@USPTO.gov
   Assistant United States Attorney
   2100 Jamieson Avenue
   Alexandria, VA 22314

*Counsel for Defendants*

By:     */John E.Curtin/*
John E. Curtin, Esq. (VSB# 40852)
jcurtin@cappat.com
CAPITOL PATENT & TRADEMARK LAW FIRM, PLLC
625 Slaters Lane, 4th Floor
Alexandria, Virginia 22314
Tel: (703)266-3330
Fax:(703)635-2213

*Counsel for Plaintiff*