IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
SEACRET SPA INTERNATIONAL,      )
                                )
      Plaintiff,                )
                                )
           v.                   )      1:15cv405(JCC/IDD)
                                )
MICHELLE K. LEE, et al.,        )
                                )
      Defendants.               )
```

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Plaintiff Seacret
Spa International's Motion for Summary Judgment [Dkt. 21], and
Defendants Michelle K. Lee and the United States Patent and
Trademark Office's ("USPTO"; collectively, "Defendants") Cross
Motion for Summary Judgment [Dkt. 25], and Defendants' Motion to
Exclude the Opinion of Thomas J. Maronick [Dkt. 29].  For the
following reasons, the Court denies the Defendants' Motion to
Exclude the Opinion of Thomas J. Maronick, denies the
Plaintiff's Motion for Summary Judgment, and grants the
Defendants' Cross Motion for Summary Judgment.

### I. Background

Plaintiff Seacret Spa International ("Plaintiff") is a
direct sales organization specializing in skin care products
containing ingredients or chemicals from the Dead Sea.  On

February 9, 2006, Plaintiff filed a federal trademark application pursuant to Section 1(a) of the Lanham Act, 15 U.S.C. § 1051(a) for a stylized mark (the "SEACRET" mark) for "products containing ingredients from the Dead Sea, namely, non-medicated skin care preparations, namely moisturizers, facial cleansers, facial peels, masks, lotions, creams, scrubs, soaps, nail care preparations, hand creams, cuticle oils; after shave in international class 3." (A561 [Dkt. 14] (Internal quotations omitted).)   On August 7, 2006, the Trademark Examining Attorney issued an Office Action refusing registration on the basis that the stylized "SEACRET" mark was likely to be confused with previously registered marks held by Proctor and Gamble Company. (*Id.*)  These previously registered marks included the standard character mark "SECRET" for the goods body spray, and a stylized form of "SECRET" for the goods personal deodorant.  (*Id.*) Plaintiff responded to the office action, and on April 20, 2007, the examining attorney maintained the refusal and suspended the application pending the outcome of another trademark application filed by Plaintiff.  (*Id.*)  On June 29, 2012, the examining attorney removed the application suspension and issued a final refusal to register the "SEACRET" mark.  (A562.)

Plaintiff admits that the "SEACRET" mark and the "SECRET" marks are phonetic equivalents, both pronounced as "secret".  (Pl.'s Mem. in Supp. [Dkt. 22] at 6.)  Plaintiff

2

sells its products primarily through a direct sales system or in
kiosks.  (Pl.'s Ex. A [Dkt. 23-2], ¶ 3.)  Plaintiff does not
market its products to traditional retailers or drug stores.
(*Id.*)  However Plaintiff's products can be found through third
party online retailers. (A321-323, A342-344.)  Plaintiff's
products range in price from $14.95 to $349.95.  However, the
Plaintiff's application does not contain any restrictions as to
trade channels or price ranges.  (A561.)

## II. Legal Standard

Expert opinion testimony is governed by Federal Rule
of Evidence 702, which provides:

> A witness who is qualified as an expert by
> knowledge, skill, experience, training, or
> education may testify in the form of an opinion
> or otherwise if: (a) the expert's scientific,
> technical, or other specialized knowledge will
> help the trier of fact to understand the evidence
> or to determine a fact in issue; . . .

Fed. R. Evid. 702.  Expert testimony is therefore admissible
under Federal Rule of Evidence 702 "if it concerns (1)
scientific, technical, or other specialized knowledge that (2)
will aid the jury or other trier of fact to understand or
resolve a fact at issue." *Westberry v. Gislaved Gummy AB*, 178
F.3d 257, 260 (4th Cir. 1999).  A district court's decision with
respect to the admissibility of expert scientific testimony "is
always a flexible one, and the court's conclusions necessarily
amount to an exercise of broad discretion guided by the

overarching criteria of relevance and reliability." *Oglesby v.*
*Gen. Motors Corp.*, 190 F.3d 244, 250; *see also Cooper v. Smith &*
*Nephew, Inc.,* 259 F.3d 194, 200 (4th Cir. 2001)(noting the
Supreme Court's statement in *Kumho Tire* that trial judges "must
have considerable leeway in deciding in a particular case how to
go about determining whether particular expert testimony is
reliable")(quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137,
152 (1999)).  This is particularly true where there is no jury
trial to be conducted, as "[t]he gatekeeping function of the
court is relaxed where a bench trial is to be conducted, because
the court is better equipped than a jury to weigh the probative
value of expert evidence." *Traxys North America, LLC v. Concept*
*Mining, Inc.*, 808 F. Supp.2d 851, 853 (E.D. Va. 2011).

Summary judgment is appropriate only where, on the
basis of undisputed material facts, the moving party is entitled
to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex*
*Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Where, as here,
neither party disputes the material facts, the case is ripe for
disposition on summary judgment.[1]  *Anderson v. Liberty Lobby,*
*Inc.*, 477 U.S. 242, 248 (1998).

---

[1] The parties in this case have agreed that so far as the Court
determines that there are disputed issues of facts, the Court
may resolve those disputes on the basis of the record before it.
(Scheduling Order ¶ 4.G.)

Section 21 of the Lanham Act, provides that an applicant who is "dissatisfied with the decision" of the Trademark Trial and Appeal Board can either "appeal to the United States Court of Appeals for the Federal Circuit," or can seek a "remedy by a civil action" against the Director of the USPTO in district court.  15 U.S.C. § 1071(a).  The parties may not present new evidence bearing on registrability in an appeal to the Federal Circuit, but they may present new evidence in a "remedy by civil action" in a district court.  *See Kappos v. Hyatt,* 132 S. Ct. 1690, 1701 (2012); *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir. 2014).  "[W]here new evidence is submitted, *de novo* review of the entire record is required because the district court cannot meaningfully defer to the PTO's factual findings if the PTO considered a different set of facts."  *Swatch*, 739 F.3d at 155; *see also Glendale Int'l Corp. v. U.S. Patent & Trademark Office*, 374 F.Supp. 2d 479, 484-85 (E.D. Va. 2005)("[W]here new evidence is presented to the district court on a disputed fact question, a *de novo* finding will be necessary to take such evidence into account together with the evidence before the board").  However, "the district court may, in its discretion, consider the proceedings before and findings of the Patent Office in deciding what weight to afford an applicant's newly admitted evidence."  *Swatch,* 739 F.3d at 155.

5

### III. Analysis

The Court will first address the Defendants' motion to exclude the opinion testimony of Dr. Thomas J. Maronick then turn to the parties' cross motions for summary judgment. Defendants argue that Dr. Maronick's testimony should be excluded because it is based on a study of the use of the "SEACRET" mark in the marketplace rather than the uses described in the application and is therefore irrelevant. (Def.'s Mem. to Exclude [Dkt. 30] at 6-7.)  The Court agrees that Dr. Maronick's reliance on marketplace usage and his failure to perform any kind of survey on the issue of potential confusion between the "SECRET" and "SEACRET" marks severely limits the probative value of his testimony.  As the relevant inquiry in a registration proceeding involves the mark and usage described in the application rather than as they appear in the marketplace, both the basis and the relevance of Dr. Maronick's opinion are suspect.  However, the parties here have agreed that any issues of fact should be resolved at this stage on the basis of the record before it, so the Court need not worry about any potential for jury confusion.  After all, "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *United States v. Brown,* 415 F.3d 1257, 1269 (11th Cir. 2005).  Accordingly, the Court notes

6

the limited usefulness of Dr. Maronick's testimony, but it denies the defendants' motion to exclude his opinion testimony.

Turning now to the cross motions for summary judgment, because the Plaintiff has presented new evidence on the issue of the likelihood of confusion between the "SEACRET" mark and the "SECRET" marks, the Court will review the TTAB's decision *de novo. See, Swatch*, 739 F.3d at 155.  The Lanham Act allows the USPTO to refuse to register a mark when it "[c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. §1052(d).  "[T]he TTAB evaluates likelihood of confusion by applying some or all of the 13 factors set out in *In re E.I. DuPont DeNemours & Co.,* 476 F.2d 1357 (CCPA 1973)."  *B & B Hardware, Inc. v. Hargis Industries, Inc.,* 135 S.Ct. 1293, 1301 (2015).  In the related field of trademark infringement lawsuits, the Fourth Circuit has provided the following nine, non-exclusive, non-mandatory factors to aid in the likelihood of confusion analysis:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by

7

the markholders; (5) the similarity of advertising
used by the markholders; (6) the defendant's intent;
(7) actual confusion; (8) the quality of the
defendant's product; and (9)the sophistication of the
consuming public.

*George & Co. LLC v. Imagination Entertainment Ltd.,* 575 F.3d
383, 393 (4th Cir. 2009).   However, the analogy between
trademark infringement and trademark registration is an
imperfect one.   While "the same likelihood of confusion standard
applies to both registration and infringement," in the
registration context, it is not the *actual* usage of the mark in
the marketplace, but "[t]he usages listed in the
application . . . [which] are critical."  *B&B Hardware*, 135
S.Ct. at 1300.

        Section 7(b) of the Lanham Act provides that
registration on the Principal Register "shall be prima facie
evidence. . . of the registrant's exclusive right to use the
registered mark in commerce on or in connection with the goods
or services *specified in the certificate . . . .*"  15 U.S.C.
§1057(b)(emphasis added).   Accordingly, this Court, like the
TTAB, must look to the full scope of usages disclosed within the
four corners of the application.   Any limitations on usage must
appear in the application, and "if an application does not
delimit any specific trade channels of distribution, no
limitation will be applied."  *B & B Hardware*, 135 S.Ct. at 1300.
Consequently, for purposes of registration, "it is the mark as

8

shown in the application and as used on the goods described in the application which must be considered, not the mark as actually used." *Id.* (quoting 3 McCarthy, Trademarks and Unfair Competition §20:15 (4th ed.), at 20-45).

Because the court must look to the mark and usages described in the application in a registration proceeding, evidence of the mark's actual, narrower use in the marketplace is irrelevant.  If an applicant wishes to narrow the channels of trade or price range covered by his proposed trademark registration, he must re-file or amend the application. Evidence of a narrower actual usage than the usage described in the application cannot itself narrow the scope of the application.  Additionally, an applicant cannot limit the coverage of a third party's pre-existing registration by introducing evidence of actual use in an ex-parte registration application proceeding.[2]

A.   <u>The Strength or Distinctiveness of the Senior</u>
     <u>Mark as Actually Used in the Marketplace</u>

In a registration action, the senior mark is not the plaintiff's mark, but the pre-existing registered trademarks already in the Register.  The relevant senior marks in this case are Proctor and Gamble's registered trademarks for "SECRET",

---

[2] Section 14 of the Lanham Act, 15 U.S.C. § 1064 provides for cancellation proceedings against the registrant to limit the scope of an existing registration.

both in stylized form and as a standard character mark.

Plaintiff concedes that the "SECRET" marks are distinctive and

established in the marketplace for personal deodorant and body

spray. (Pl.'s Mem. in Supp. at 12.)  This factor therefore

weighs against registrability of the plaintiff's mark in this

case.

> B.   Similarity of the Two Marks to Consumers

In considering the similarity of the marks, the Fourth

Circuit has instructed courts to "focus on whether there exists

a similarity in sight, sound, and meaning which would result in

confusion." *George & Co.*, 575 F.3d at 396.  The similarity of

two marks ought not to be evaluated by a side-by-side comparison

of the marks, but rather a consideration of the marks "in light

of the fallibility of memory." *In re St. Helena Hosp.,* 774 F.3d

747, 751 (Fed. Cir. 2014); *see also, Coach Servs. Inc. v.

Triumph Learning LLC,* 668 F.3d 1356, 1368 (Fed. Cir. 2012)("The

proper test is not a side-by-side comparison of the marks, but

instead whether the marks are sufficiently similar in terms of

their commercial impression such that persons who encounter the

marks would be likely to assume a connection between the

parties").

With respect to sound, Plaintiff admits that the

"SEACRET" mark and the "SECRET" marks are phonetic equivalents.

(Pl.'s Mem. in Supp. at 12.)  Spoken aloud, there is no possible

way to identify between the two marks.   The maddening confusion

resulting from this identical pronunciation will be readily

apparent to anyone attempting to read this opinion aloud.

        Plaintiff argues that the presence of an "A" in the

middle of the word, and a design element mimicking a wave

running through the middle of the "E" and the "A" differentiate

the "SEACRET" mark from the "SECRET" mark with respect to sight.

(Pl.'s Mem. in Supp. at 13.)   This argument runs aground on the

fact that one of the "SECRET" marks is registered as a standard

character mark.   "If the registrant . . . obtains a standard

character mark without claim to any particular font, style, size

or color, the registrant is entitled to depictions of the

standard character mark regardless of font style, size, or color

. . . ."  *Citigroup Inc. v. Capital City Bank Group Inc.,* 637

F.3d 1344, 1353 (Fed. Cir. 2011).   Because the "SECRET" mark is

registered as a standard character mark, its registration

extends to a rendition of the word "secret" in the same font as

the "SEACRET" mark, complete with a wave design element in the

middle of the "E".   The TTAB also found, and this Court agrees,

that embedding an "A" between the letters "SE" and "CRET" does

not significantly change the appearance of the word.  (A597).

Because neither the font and design elements nor the addition of

a central "A" greatly differentiates the "SEACRET" mark from the

marks covered by the "SECRET" registration, the Court finds that the two marks are similar in sight to the point of confusion.

Finally, the Court turns to meaning.  Plaintiff contends that as the "SEACRET" mark begins with the word "sea" it has a different meaning than the "SECRET" mark, conjuring up images of the sea in the consumer.  While "SEACRET" seeks to invoke the traditional link between moisture as the essence of wetness and wetness as the essence of beauty, Plaintiff acknowledged before the TTAB that the "SEACRET" mark also "conjure[s] up a perception of 'secret ingredients.'"  (A. 599.) Plaintiff suggests that the accompanying tag line "minerals from the dead sea", used in conjunction with the sale of the goods, adds to the theme of a nautical origin.  (Pl.'s Mem. in Supp. at 14.)  However, the tag line "minerals from the dead sea" does not appear in Plaintiff's application for registration.  Because the tag line does not appear in the application, it is irrelevant to the question of similarity at the registration stage.  *See In re Shell Oil Co.,* 992 F.2d 1204, 1208 at n.4 (Fed. Cir. 1993); *In re H.J. Seiler Co.,* 289 F.2d 674, 675 (CCPA 1961).  As the TTAB found, the "SEACRET" mark is clearly a play on the words "sea" and "secret", conjuring images of both secret, mysterious ingredients and the sea.  This Court agress, and finds that the "SEACRET" mark, like the "SECRET" marks, has connotations of secrecy or mystery as one of its central

commercial meanings.  Because the "SEACRET" and "SECRET" marks are similar to the point of confusion with regards to sight, sound, and meaning, the similarity of the two marks to consumers weighs against registration.

C.    The Similarity of the Goods or Services That the Marks Identify

In addressing the similarity of the goods or services that the marks identify, "the goods in question need not be identical or in direct competition with each other."  *George & Co.,* 575 F.3d at 397.  Indeed, "[b]ecause confusion may arise arise even where products are merely related, the court is to consider whether the public is likely to attribute the products and services to a single source."  *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.* 227 Fed.App'x. 239, 244 (4th Cir. 2007).

The goods listed in the application for the "SEACRET" mark are not in direct competition with the goods covered under the "SECRET" marks.  The "SEACRET" application is for the goods "[p]roducts containing ingredients from the Dead Sea, namely, non-medicated skin care preparations, namely moisturizers, facial cleansers, facial peels, masks, lotions, creams, scrubs, soaps, nail care preperations, hand creams, cuticle oils; after shave in international class 3."  (A651)  The "SECRET" marks are for the goods "body spray" in international class 3, and

13

"personal deodorant" in international class 3.  In rough summation, the "SEACRET" application covers skin care products, while the "SECRET" registrations cover deodorant and body spray. Clearly, these goods are not interchangeable or in competition with each other.  However, more generally, and as Plaintiff itself points out, these goods are all personal hygiene products capable of being applied to the skin.  (Pl.'s Mem. in Supp. at 15.)

    Courts have approved the consideration of other, third-party registrations covering both the goods described in the application and the goods described in the pre-existing registration to aid in determining whether a specific set of goods are so related that the public might attribute them to a single source.  *See, e.g., In re Mucky Duck Mustard Co.,* 6 USPQ 1467, 1470 n.6 (TTAB), *aff'd per curiam,* 864 F.2d 149 (Fed. Cir. 1988).  In this case the TTAB pointed to at least fourteen registered marks which covered both skin care lotions or creams and deodorant or body spray.  After Plaintiff filed this civil action, the USPTO submitted an additional 120 third-party registrations which included goods covered by both the "SEACRET" application and the "SECRET" registration.  (Fletcher Decl. Ex. B [Dkt. 26-4].)  Plaintiff's evidence does nothing to address "whether the public is likely to attribute the products and services to a single source."  *Renaissance Greeting Cards,* 227

14

Fed.App'x. at 244.   Rather, Plaintiff's evidence tends to show only that the public is unlikely to mistake their skin care products for deodorant.   As the abundance of trademark registrations covering both deodorant and skin care products suggests, Plaintiff's products and the goods covered by the "SECRET" trademarks are related products, both being toiletries. As these products are often made by the same manufacturer, there is a high probability that a consumer might attribute both of them to a single source.   Therefore, this factor weighs against registration.

      D.   <u>Similarity of the Facilities Used by the Markholders</u>

When considering the similarity of the facilities used by the markholders, "the key question is whether both products [are] sold in the same channels of trade."   *Rosetta Stone Ltd. v. Google, Inc.* 676 F.3d 144, 155 (4th Cir. 2012)(internal quotation marks omitted).   In the registration context, the similarities in channels of trade must be analyzed based on the channels of trade contemplated by the application.   *See B & B Hardware*, 135 S.Ct. at 1300.   Any limitations on usage must appear in the application, and "if an application does not delimit any specific trade channels of distribution, no limitation will be applied."   *Id.*   (internal quotations and citations omitted).

Plaintiff's application contains no limitations as to specific channels of trade.  Accordingly, the fact that Plaintiff currently operates primarily through a direct marketing business model with additional sales through kiosks while the "SECRET" mark is primarily sold through major retail stores is of no value in assessing the likelihood of confusion under the application.  The application contains no limitations on the channels of trade to be used in connection with the "SEACRET" mark, so the TTAB and this Court must assume that it contemplates the use of the "SEACRET" mark in all channels of trade, including those described in the "SECRET" registration and actually used by the "SECRET" mark.  Accordingly, while this factor does not weigh very heavily in the Court's decision, it weighs against registration.

> E.   Similarity of Advertising Used by the Markholders

Plaintiff asserts that because its business model is primarily focused on direct sales and it does little to no traditional retail market advertising, this factor should weigh heavily against a likelihood of confusion.  (Pl.'s Mem. in Supp. at 18.)  This argument again ignores the fact that a registration proceeding deals with the mark as described and limited in the application, not as presently used in the marketplace.  *See B & B Hardware*, 135 S.Ct. at 1300.  Plaintiff's current advertising strategy is based upon their use

16

of direct sales trade channels.  (Pl.'s Mem. in Supp. at 18.)
However, the application contains no limitations to specific
channels of trade, and Plaintiff could adopt a more conventional
advertising strategy tomorrow and remain within the four corners
of the application.  As discussed above, when the application
does not include any limitations to specific channels of trade,
none will be implied.  Accordingly, the current dissimilarity in
advertising between the Plaintiff and P&G is of irrelevant to
the determination of the likelihood of confusion under the
application.

   F. <u>Defendant's Intent</u>

   This factor is far more applicable in actions for
trademark infringement than it is in a registration proceeding.
Generally, "[i]f there is intent to confuse the buying public,
this is strong evidence establishing likelihood of confusion,
since one intending to profit from another's reputation
generally attempts to make his signs, advertisements, etc., to
resemble the other's so as to deliberately induce confusion."
*Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1535 (4th Cir.
1984).  Neither party alleges that Plaintiff acted in bad faith
in creating the "SEACRET" mark.  However, while this factor can
be extremely probative in infringement cases, it is rarely
relevant to the likelihood of confusion in registration

17

proceedings.  Accordingly, the Court will not accord any significant weight to this factor in this case.

      H.   <u>Actual Confusion</u>

      While evidence of actual confusion is strongly indicative of a likelihood of confusion, "[p]roof of actual confusion is unnecessary; the *likelihood* of confusion is the determinative factor." *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991)(internal quotation marks omitted).  It is true that "the absence of any evidence of actual confusion over a substantial period of time . . . creates a strong inference that there is no likelihood of confusion." *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 269 (4th Cir. 2006).  However, a lack of evidence of actual confusion should be taken with a note of caution, especially when it appears in an *ex parte* registration application proceeding like the case at hand.  *In re Majestic Distilling Co, Inc.,* 315 F.3d 1311, 1317 (Fed. Cir. 2003).  Neither the TTAB nor the Court can rely on the party seeking to register their mark to search out and report examples of actual confusion, when doing so would be to their obvious detriment.  Accordingly, the uncorroborated claims made by Plaintiff that "there is no evidence that there has been actual confusion" will be given little weight by the Court.  (Pl.'s Mem. in Supp. at 19); *See In re Majestic*, 315 F.3d at 1317 (agreeing that "Majestic's

uncorroborated statements of no known instances of actual
confusion are of little evidentiary value"). The Court finds
that the lack of any evidence of actual confusion weighs against
a likelihood of confusion, but due to the *ex parte* nature of
this registration application proceeding, this factor is of
extremely limited value and it does not outweigh the other
factors discussed above.

I.    Quality of the Defendant's Product

This factor typically deals with situations involving
cheap alternatives or knock offs of earlier established goods
and brands.  Both parties agree it is not relevant in this case.

J.    Sophistication of the Consuming Public

Normally, "buyer sophistication will only be a key
factor when the relevant market is not the public at-large."
*Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 466 (4th Cir.
1996).  Plaintiff contends that because their products currently
on the market are generally high price point goods marketed
towards knowledgeable consumers through direct marketing, this
factor should weigh against a likelihood of confusion.  (Pl.'s
Mem. in Supp. at 21.)  Once again, Plaintiff loses sight of the
fact that in this context, it is the application, not the
current state of the marketplace, which must be examined.  The
"SEACRET" application contains no meaningful limitations as to
the kinds of consumers targeted, nor does the "SECRET"

19

registration.   Accordingly, it is presumed that the goods are
offered to all normal potential customers.   *Coach Servs.*, 668
F.3d at 1370.

Skin care products are widely bought, and "do not
require much consumer sophistication."   *In re Mighty Leaf Tea*,
601 F.3d 1342, 1346 (Fed. Cir. 2010).   The fact that some of the
"SEACRET" products are sold for prices as high as $350 does not
itself establish that the consumer of "SEACRET" products is
sophisticated.   Plaintiff admits that some of its products sell
for as low as $14.95.   (Pl.'s Mem. in Supp. at 21.)   Where a
mark targets both highly knowledgeable and average consumers,
"the issue of likelihood of confusion will usually revolve
around the less knowledgeable consumer."   4 McCarthy, Trademarks
and Unfair Competition § 23:100 (4th ed.).   Because the
application contains no clear limitations as to the target
market for goods carrying the "SEACRET" mark and the goods are
in fact sold for prices as low as $14.95, the Court finds that
Plaintiff is targeting the public at-large, and will give little
weight to buyer sophistication in its analysis of the likelihood
of confusion.

K.   The Totality of the Factors Indicate a Likelihood
of Confusion

For the reasons discussed above, the Court finds that
the first four factors identified by the Fourth Circuit as

20

bearing on the likelihood of confusion, namely the strength or
distinctiveness of the senior mark as actually used in the
marketplace, the similarity of the two marks to consumers, the
similarity of the goods or services that the marks identify, and
the similarity of the facilities used by the markholders, all
weigh in favor of a likelihood of confusion.  The Court further
finds that the similarity of the advertising used by the
markholders, the defendant's intent, the quality of the junior
markholders product, and the sophistication of the consuming
public do not weigh significantly either for or against a
finding of likelihood of confusion in this case.  Finally, the
Court finds that while the lack of evidence of actual confusion
weighs slightly against finding a likelihood of confusion, the
*ex parte* nature of the registration proceeding in this case
renders that factor unpersuasive.  Having considered all of the
factors, the Court finds the strong similarities between the two
marks in sight, sound, and meaning as well as the similarity of
the goods identified in this case to be the most persuasive
factors.  The Court agrees with the TTAB that the mark described
by Plaintiff's application is sufficiently similar to the mark
covered by the "SECRET" registration "as to be likely, when used
on or in connection with the goods of the applicant, to cause
confusion, or to cause mistake, or to deceive."  15 U.S.C.

§1052(d).  Accordingly, the Court grants Defendants' Cross

Motion for Summary Judgement.

## IV. Conclusion

For the foregoing reasons, the Court denies the

Defendants' motion to exclude the testimony of Dr. Thomas J.

Maronick, denies the Plaintiff's Motion for Summary Judgment and

grants the Defendants' Cross Motion for Summary Judgment.  The

ruling of the TTAB denying plaintiff's application for

registration of the "SEACRET" mark is therefore affirmed.  An

appropriate order will issue.


                                    _____/s/_____
March 8, 2016                        James C. Cacheris
Alexandria, Virginia        UNITED STATES DISTRICT COURT JUDGE